UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL CASE NO. 5:20-cr-00104-KDB-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>MATTHEW ZACHARY COLEMAN, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on Defendant's Pro Se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Doc. 49].

I.  **PROCEDURAL BACKGROUND**

   A.  **Offense Conduct**

On November 10, 2020, Defendant Matthew Zachary Coleman ("Defendant") was a North Carolina state probationer serving a suspended sentence when probation officers conducted a warrantless search of his residence in Lincoln County, North Carolina. [Doc. 28 at ¶ 10: Presentence Investigation Report (PSR)]. During the search, probation officers seized from his bedroom approximately 190 grams of 99% pure methamphetamine, $4,461 in United States currency, a firearm, and other drugs and drug paraphernalia. [Id.]. In a recorded jail call later that day, in response to the other caller telling Defendant that he should have stored the drugs in a safer location, Defendant responded, "I kept telling you bro, we got to move smart. We should have threw that shit in the vent bro, way down in that mother fucker. I just panicked, I didn't know what to do man. It's over with now gang[.]" In response to the other caller saying that Defendant

could claim possession for personal use because the drugs were not "bagged out," Defendant responded, "Hah, bro. They got possession with intent to sell and deliver. Don't be like that, because I got scales, weed, pills, a gun, money." [Id. at ¶ 12].

B.     Criminal Proceedings

On December 15, 2020, Defendant was charged in a Bill of Indictment with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count One"), one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) ("Count Two"), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) ("Count Three") in relation to the fruits of the probation search. [Doc. 1: Bill of Indictment]. Attorney R. Brent Walker was appointed to represent the Defendant. [2/24/2021 Docket Entry]. The parties agreed to a plea agreement pursuant to which Defendant would plead guilty to Counts One and Three and the Government would dismiss Count Two. [Doc. 18 at ¶ 1: Plea Agreement; Doc. 19 at ¶ 1: Amended Plea Agreement]. The plea agreement jointly recommended a drug quantity of 195 grams of actual methamphetamine and included a waiver of Defendant's right to appeal or seek post-conviction relief, except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶¶ 8(a), 17].

On March 24, 2021, the Magistrate Judge conducted Petitioner's Rule 11 hearing. [Doc. 44: Plea Hearing Tr.; Doc. 23: Acceptance and Entry of Guilty Plea]. At the hearing, the Government reviewed all the elements of the crimes charged and their maximum and minimum penalties. [Doc. 44 at 3-4, 8]. Defendant testified that he understood that by pleading guilty he was waiving his right to a trial. [Id. at 6]. Defendant also testified that he was in fact guilty of the counts to which he was pleading guilty. [Id. at 7]. Defendant further testified that he understood

2

that he was waiving his right to appeal his conviction and sentence and to challenge his conviction and sentence in post-conviction proceedings. [Id. at 10]. Defendant also testified that he had had sufficient time to discuss potential defenses to the charges with his attorney and that he was satisfied with his services. [Id. at 11]. The Magistrate Judge accepted Defendant's guilty plea, finding it to be knowingly and voluntarily made. [Id. at 12].

Before Defendant's sentencing hearing, a probation officer prepared a PSR. [Doc. 28]. Based on a total offense level of 33, which included a three-level reduction for acceptance of responsibility, and a criminal history category of VI, the probation officer recommended a sentencing range of 235 to 293 months. [Id. at ¶¶ 38-40, 59, 85]. At sentencing, the Court varied downward from the recommended guidelines range and sentenced Defendant to a term of imprisonment of 210 months on Count One and a term of imprisonment of 120 months on Count Three, to be served to concurrently to the term imposed on Count One. [Doc. 31 at 2: Judgment; Doc. 32 at 3: Statement of Reasons].

Defendant appealed, arguing that the Court improperly dismissed his motion to proceed pro se and that his sentence is substantively unreasonable. United States v. Coleman, No. 21-4389, 2023 WL 3018421, at *1 (4th Cir. Apr. 20, 2023). The Fourth Circuit affirmed the dismissal of the motion and dismissed the appeal from his sentence as within the scope of the appeal waiver. Id. at *1-*2.

C.  **Defendant's Motion to Vacate**

Defendant now seeks relief pursuant to 28 U.S.C. § 2255. [Doc. 49]. As grounds, Defendant claims that (1) he received ineffective assistance of counsel because his attorney did not move to suppress the evidence found during the warrantless probation search; and (2) that his appellate counsel was ineffective for failing to argue that his conviction under § 922(g)(1) was
3

unconstitutional after New York State Rifle & Pistol Assn., Inc. v. Bruen, 142 S.Ct. 2111 (2022).[1] [Doc. 49-1 at 10-11; Doc. 49 at 3, 5-13].

Defendant acknowledges that, consistent with N.C. Gen. Stat. § 15A-1343(b)(13), the terms of his probation required that he submit "at a reasonable time to warrantless searches" of his person, vehicle, and premises.[2] [Doc. 49 at 5; Doc. 49-1 at ¶ 1: Coleman Aff.; see also Doc. 58-1 at 2]. He argues, however, that the warrantless search during which the firearm and drugs were seized was illegal because the search was not supported by reasonable suspicion. [Id. at 5.]. That is, Defendant attests that none of the officers conducting the search had any "particular information" suggesting he was engaged in criminal activity or otherwise in violation of his probation. [Doc. 49-1 at ¶ 5]. Defendant also contends that "the scope of the search totally surpassed the scope permissible." [Doc. 49 at 6]. Defendant argues that effective counsel would have known that the firearm and drugs were seized during an illegal search and successfully achieved suppression of this evidence. [Doc. 49 at 6-8]. Defendant further attests that he told his attorney that he wanted to suppress "all evidence" from the "illegal search and seizure," but that his attorney "convinced [him] that a suppression motion would do no good and/or would be defeated." [Doc. 49 at ¶ 11]. Defendant also attests that "[he] was clearly coerced into pleading guilt[y] from the start." [Id. at ¶ 15].

---

[1] Although Defendant initially frames this issue as ineffective assistance of trial counsel for failing to move to dismiss this charge, Defendant later acknowledges that Bruen was not decided until after his conviction and argues that his appellate counsel was ineffective for failing to raise Bruen on appeal. [See Doc. 49-1 at 11; Doc. 49 at 8, 12].

[2] In North Carolina, as a regular condition of probation, a defendant must "[s]ubmit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present, *for purposes directly related to the probation supervision*, but the probationer may not be required to submit to any other search that would otherwise be unlawful." N.C. Gen. Stat. § 15A-1343(b)(13) (emphasis added). The predecessor to this provision, N.C. Gen. Stat. § 15A-1343(b1)(7), which allowed such warrantless searches for purposes "reasonably related" to the probation supervision, was amended in 2009.

For relief, Defendant asks the Court to "suppress evidence and vacate counts," appoint counsel, grant an evidentiary hearing, and/or resentence Defendant without the § 922(g) conviction. [Doc. 49-1 at 18].

The Government responded. [Doc. 58]. The Government argues that Defendant's conclusory allegations do not sufficiently allege a Fourth Amendment violation and that a motion to suppress would have been meritless in any event. The Government also asserts that Defendant's plea was knowing and voluntary and that he, therefore, waived any claim of pre-plea ineffective assistance when he pleaded guilty. Finally, the Government argues that Defendant cannot show deficient performance or prejudice on his claim regarding his appellate counsel's failure to challenge his § 922(g)(1) conviction under Bruen. [Id.]. The Defendant replied. [Doc. 61].

Because the record here lacked any information regarding the purpose of or circumstances leading to the subject search or, to the extent the search was not directly related to Defendant's probation supervision, showing that the search otherwise complied with the Fourth Amendment, the Court held an evidentiary hearing to address these issues. See United States v. McNeil, 126 F.4th 935 (4th Cir. 2025) (finding district court erred in failing to hold evidentiary hearing on defendant's claim of ineffective assistance of counsel based on unfiled motion to suppress); Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987) ("A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."); United States v. Midgette, 478 F.3d 616, 624 (4th Cir.), cert. denied, 551 U.S. 1157 (2007) (finding that searches conducted in conformity with § 15A-1343(b1)(7) "are justified by the State's special needs" and, therefore, are "reasonable under the Fourth Amendment").

**D. Evidentiary Hearing**

At the hearing, Defendant, who was represented by counsel, offered his own testimony. In response, the Government presented the testimony of Probation Officer (P.O.) Rachelle Uzzolina, Chief P.O. Haley Sain, and Plaintiff's attorney, Brent Walker, as well as numerous exhibits [Doc. 67: JERS Exhibits].

Defendant testified, in pertinent part, as follows. Before the subject search, Defendant tested positive for marijuana in violation of his probation. During the search, Defendant was handcuffed and placed on the front porch. At one point, he went inside to locate some car keys. At this time, he saw that the hot water heater had been removed from the closet in his bedroom and that the walls had been removed. In one of his first meetings with Walker, Defendant asked Walker about the lawfulness of the search. Walker told the Plaintiff that he had reviewed the North Carolina Probation Handbook and that the law did not support a motion to suppress the evidence from the search. In a subsequent meeting, the Defendant again asked Walker about a possible motion to suppress. Walker "shot it down" again. Defendant did not learn that the search was improper until he started conducting his own research in prison. If he had known about the law applicable to his case before pleading guilty, there is "no doubt in [his] mind" that he would not have pleaded guilty.

The Government's evidence at the hearing showed the following. As a North Carolina probationer, Defendant was subject to the regular condition of probation allowing warrantless searches for "purposes directly related to probation" to ensure compliance with the probation judgment as ordered by the court. Uzzolina supervised the Defendant during a previous term of post-release supervision in 2018 or 2019 and then again in 2020 on the subject term. During the earlier supervision, Defendant admitted to membership in a Security Risk Group (SRG), that is,

the Folk Nation. He also had gang-related tattoos. As part of his SRG investigation, a search of Defendant's residence was conducted to find validating items. When the probation officers arrived, two individuals fled the premises. A firearm, large amounts of marijuana, and Xanax were found during this search. The results of that search resulted in the 2020 probation term relevant here.

In 2020, Defendant was validated as an SRG member. During his supervision, Defendant scored an 85 on his OTI,[3] yielding Level One probation status. Level One probationers have an extremely high risk of recidivism and are subject to the highest level of supervision. SRG members on probation are subject to additional rules and regulations, including warrantless searches every 90 days.

Beginning in August 2020, Defendant's probation records show numerous probation violations. From August 31, 2020, to September 8, 2020, the electronic monitoring system showed Plaintiff to be in areas where known drug users congregate on several occasions. During this time, Defendant also left the county without permission several times. On September 30, 2020, Defendant tested positive for marijuana. Sometime in September 2020, Defendant's supervision was transferred to another probation officer when Uzzolina changed roles within the probation department. Not long after, while Uzzolina was driving one day, Defendant came "flying up to the bumper" of her state vehicle at 120 m.p.h. while attempting to evade another vehicle. Defendant was directed to report to his probation officer regarding this incident. He failed to report.

Defendant's continuing violations of the conditions of his supervised released led his P.O. to believe that he would continue to so violate, as well as possess and sell drugs. As Chief P.O.,

---

[3] Offender Traits Inventory.

Sain reviewed Defendant's probation records, including the summaries of his probation violations. For several reasons, Sain decided that the Defendant needed more supervision and that a warrantless search of his home was necessary. These include the search requirements incident to Defendant's SRG status, complaints received by the narcotics division of the Sheriff's Office regarding heavy traffic at Defendant's residence, the speeding and failure to report incident involving Uzzolina, and the documented probation violations.

To conduct the search safely, Sain requested assistance from local law enforcement, which is not uncommon. When the probation officers, including Sain and Uzzolina, arrived to conduct the search of Defendant's residence on November 10, 2020, he was placed in handcuffs and patted down. At some point, Defendant was brought to the front porch or deck, where he waited for the duration of the search.[4]

Uzzalina searched the Defendant's bedroom. Behind a television, she saw that a panel had been removed and was being held in place by a single screw, which was essentially dangling from the wall. The panel was moved to the side and, when Uzzalina looked down, she found a firearm, methamphetamine, and over $2,000.00 in a hole in the wall. The search of the residence was completed in approximately two to three hours. There was nothing unusual about how it was conducted.

Brent Walker, Defendant's attorney, testified as follows. Walker met the Defendant in February 2021 when Walker was appointed to represent him. Walker recalls the Defendant asking

---

[4] There is some discrepancy in the evidence regarding when Defendant was brought to the porch during the search. Defendant testified that he was handcuffed and placed on the front porch for a couple of hours while the search was conducted. Sain testified that Defendant, who was acting nervously and erratically, was brought to the porch after he was unable to abide instructions to remain seated inside during the search. A Sheriff's Office report from the incident reflects that Defendant was placed on front deck of the residence after he answered the door and was secured.

him to file a motion to suppress in one of their early meetings. Defendant's concerns at the time involved the scope of the search. Defendant believed the officers had "overdone it." Based on Walker's review of the discovery received from the Government, including pictures from the search, Uzzolina's and Sain's reports, and a report from a Sheriff's Deputy regarding a "strong odor of marijuana" coming from inside the residence immediately before the search, Walker advised Defendant that there was no basis for a motion to suppress. Regardless of any other factor, Walker believed, at the time of the search, that the strong marijuana odor would have been probable cause for the search. He believed that, at the time of the search, reasonable suspicion was not required for a warrantless probation search and, even if it had been, he considered the marijuana odor sufficient to satisfy this requirement. Walker had no concerns regarding whether the search had been conducted properly. Walker explained to Defendant why a motion to suppress would be unsuccessful.

On cross-examination by the Defendant, Walker acknowledged that he had not seen the records showing Defendant's probation violations until the evidentiary hearing and that he had not considered them in advising the Defendant regarding the motion to suppress. Rather, his advice centered on the fact that Defendant was subject to warrantless searches under the terms of his probation and the marijuana odor creating reasonable suspicion in any event. While Walker recalled the policy requiring that Defendant's residence be searched every 90 days, it did not seem to inform his advice on the motion to suppress. Walker was also concerned that Defendant lacked credibility and was unable to provide another witness that he, Walker, could use to support Defendant's motion to suppress.

At the conclusion of the hearing, the Court allowed the Defendant 14 days to file a supplemental brief explaining how a motion to suppress would have been meritorious. On

9

Defendant's motions, the Court granted Defendant multiple extensions of this deadline. [Docs. 66, 68; 8/22/2025 & 8/29/2025 Text Orders]. Defendant, however, recently notified the Court that he would not be filing such a brief. [Doc. 69].

II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. "[W]hen a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claims," an evidentiary hearing is necessary. United States v. Mayhew, 995 F.3d 171, 176-77 (4th Cir. 2021) (citing United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000)).

III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional

norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). To be effective, counsel is not required anticipate trends in the law or argue in favor of overturning existing law. Honeycutt v. Mahoney, 698 F.2d 213, 217 (4th Cir.1983) ("Certainly a criminal defense lawyer in state court is well advised to keep abreast of current trends in the law which may be favorable to his clients. However, we do not believe that failure to raise every issue which might have support from other jurisdictions constitutes ineffective assistance of counsel.").

The prejudice prong inquires whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily

11

Case 5:20-cr-00104-KDB-SCR     Document 70     Filed 09/09/25     Page 11 of 16

relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098 (1974). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

### A. Motion to Suppress

In considering a claim of ineffective assistance based on counsel's failure to move to suppress evidence, the court asks whether "an unfiled motion would have had 'some substance,'" Grueninger v. Director, Va. Dep't of Corr., 813 F.3d 517, 524-25 (4th Cir. 2016) (quoting Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011)), and if so, "whether reasonable strategic decisions warranted not filing the motion," United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021) (internal quotation marks omitted). The prejudice prong then requires the petitioner to show both that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the

verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Contrary to Plaintiff's allegations, the evidence now before the Court plainly shows that the warrantless search was conducted for purposes "directly related" to Defendant's supervision in accordance with N.C. Gen. Stat. § 15A-1343(b)(13). That is, the evidence shows that the search was necessary to promote compliance with Defendant's probation judgment and required by Defendant's SRG status, which called for a warrantless search every 90 days. Defendant had several recent probation violations, including testing positive for marijuana and failing to report after the speeding incident, in addition to the complaints regarding Plaintiff's residence. Moreover, Defendant's residence had not been searched since the beginning of his probation term, as required by Defendant's Level One SRG status.

As such, the warrantless search was permissible under and conducted in compliance with § 15A-1343(b)(13), and a motion to suppress the evidence therefrom was meritless and would have been denied. Furthermore, Strickland does not require Walker to have lodged a novel challenge to the constitutionality of North Carolina's warrantless search condition, particularly where the constitutionality of its broader predecessor has been upheld. See Honeycutt, 698 F.2d at 217; Midgette, 478 F.3d at 624. For these reasons, Walker's failure to file a motion to suppress the fruits of the warrantless probation search was not ineffective assistance of counsel and Defendant has not shown prejudice.[5]

---

[5] Defendant's allegation that he was "clearly coerced" into pleading guilty is too vague and conclusory to state a claim for relief. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it is proper to dismiss vague and conclusory allegations). Defendant fails to allege any facts supporting this claim and, other than his claim that he would have pleaded not guilty with different advice, he alleges nothing undermining the voluntariness of his plea. To the extent he relates the alleged coercion to Walker's advice regarding the motion to suppress, the claim fails. Walker properly advised the Defendant that a motion to suppress would fail and any decision by Defendant to plead guilty based on that advice was supported in fact and in law.

13

To be sure, it appears that Defendant's counsel may have failed to appreciate that warrantless probation searches in North Carolina are not limitless but rather may be conducted for "purposes directly related to the probation supervision." Even if Walker's advice regarding the motion to suppress were based on such belief, Defendant was not prejudiced thereby. Regardless of the basis for the advice, Defendant did not and could not show that his Fourth Amendment claim was meritorious where the warrantless probation search was proper under § 15A-1343(b)(13). See Kimmelman, 477 U.S. at 375.

### B. Failure to Challenge Firearm Conviction on Appeal

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Defendant contends that his appellate attorney was ineffective for failing to challenge Defendant's § 922(g) conviction on appeal. Defendant argues that, under New York State Rifle

& Pistol Assn., Inc. v. Bruen, 142 S.Ct. 2111 (2022), which was decided after his conviction but "before his appeal was filed,"[6] his § 922(g) conviction is unconstitutional. This argument plainly fails. Bruen regards the right of "law-abiding citizens with ordinary self-defense needs" to keep and bear arms. Bruen, 142 S.Ct. at 2156. Since Bruen, the Fourth Circuit has held that § 922(g)(1) is constitutional facially and as applied to all felons. United States v. Hunt, 123 F.4th 697, 700 (4th Cir. 2024). Even more recently, the Fourth Circuit found that § 922(g)(9), which prohibits those having been convicted of a misdemeanor crime of domestic violence from possessing a firearm, facially constitutional. United States v. Nutter, 137 F.4th 224, 231 (4th Cir. 2025). As such, Defendant's appellate attorney was not deficient for failing to raise a meritless challenge on appeal. See generally Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law"). Because Defendant has not shown deficient performance or prejudice, the Court will also deny Defendant's motion on this ground.

In sum, Defendant has failed to show he is entitled to relief under § 2255 and his motion to vacate will be dismissed. The Court, therefore, will deny Defendant's request for counsel as moot.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Vacate is denied and dismissed.

The Court further finds that Defendant has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable

---

[6] This characterization is incorrect. Defendant's notice of appeal was filed on August 3, 2021 [Doc. 34]; Bruen was decided on June 23, 2022; and the Fourth Circuit decision on Defendant's appeal issued on April 20, 2023 [Doc. 47].

jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Defendant has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 49] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: September 9, 2025

Kenneth D. Bell
United States District Judge